UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN NOBS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14cv 01264HEA |
| | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's request for judicial review under 42 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's applications for disability insurance benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-434, 1381-1385 . For the reasons set forth below, the Court will affirm the Commissioner's denial of Plaintiff's applications.

### **Facts and Background**

On February 7, 2013 Plaintiff appeared and testified before the Administrative Law Judge. Plaintiff was 48 years old at the time of the hearing. He has a high school education. Plaintiff had past work experience in concrete work for the City of Overland. Plaintiff also worked as a plumber's laborer from

2000 to 2002. Plaintiff testified that he suffers from severe pain, numbness in his hands, headaches, nausea, depression and blurred vision. He also stated he has difficulty raising things or even throwing a ball due to mobility issues with both shoulders. Plaintiff has problems with his lower back which inhibit his ability to lift due to severe pain and numbing in his legs and thighs. He also testified that he takes medication for anxiety.

On examination by his attorney Plaintiff testified he gets headaches three to five times per week and they make his vision blurred. Further when the numbness affects his hands he has difficulty grasping things like buttons, coins, and zippers. And his shoulders prevent him from reaching above his head as the motion causes shooting pain from his neck, part of his chest and his shoulder blade and back. He further noted that when his legs become numb he has to stand and walk for about 15 minutes. As a result he can only sit for 20 to 25 minutes at a time. He noted he could not alternate between walking and standing during an eight hours period of time because when his back become problematic he has to sit down for up to three hours.

Ms. Gonzales, a Vocational Expert, testified based upon two hypotheticals presented by the ALJ, at the hearing as well. There were some physical restrictions in the first hypothetical: lift and carry 20 pounds occasionally, ten pounds frequently, stand to walk for six out of eight hours, sit for six, occasionally climb

stairs and ramps, occasionally stoop, kneel, crouch, push and pull with legs was limited occasional operation of foot controls bilaterally and reaching overhead was limited to occasional on the right side. Also there was to be avoidance to extreme cold, unprotected heights and vibrations. The second hypothetical limited lifting and carrying to ten pounds occasionally, less than ten pounds frequently; standing or walking two hours out of eight; and sitting for six with all other aspects being the same..

The ALJ concluded, based upon the inquiry, and responses, of the Vocational Expert, that Plaintiff retained the Residual Functional Capacity to perform light work (lifting and carrying 20 pounds occasionally and ten pounds frequently; sitting at least six hours out of eight; and standing/walking at least six hours out of eight). The ALJ concluded Plaintiff can never climb ropes, ladders, or scaffolds, but can occasionally climb stairs, and ramps. The ALJ further found that Plaintiff can stoop, kneel, and crouch, as well as push and pull with his legs with limitation of no more than occasional operation of foot controls bilaterally. Plaintiff can occasionally reach overhead with his right extremity and must avoid exposure to vibration, extreme cold and unprotected heights.

The ALJ found Plaintiff had the severe impairments of mild degenerative changes of the right shoulder and degenerative changes of the cervical and lumbar spine. The ALJ further found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ( 20 CFR 404.1520(d) , 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ therefore concluded Plaintiff was not disabled.

The Appeals Council denied his request for review on June 6, 2014.The decision of the ALJ is now the final decision for review by this court.

**Statement of Issues**

The issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact by the ALJ are supported by substantial evidence on the record as a whole. Here the Plaintiff asserts the ALJ failed to point to "some " medical evidence to support the findings of Plaintiff's Residual Functional Capacity and that the vocational experts testimony was not compatible with the dictionary of occupational titles.

**Standard For Determining Disability**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738

(8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has

such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. Id... At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a

significant number of jobs within the national economy. *Id.; Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

**RFC**

A claimant's Residual Functional Capacity (RFC) is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the

evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See *Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F .3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir.2006).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." Id. The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ need only acknowledge and consider those factors. *Id*. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

**ALJ Decision**

The ALJ here utilized the five-step analysis as required in these cases. The ALJ determined at Step One that Plaintiff had not engaged in substantial gainful activity during the period from the alleged onset date of January 1, 2011. The ALJ found at Step Two that Plaintiff had the severe impairments of mild degenerative changes of the right shoulder and degenerative changes of the cervical and lumbar spine.

At Step Three, the ALJ found that Plaintiff did not suffer from an impairment or combination of impairments that meets or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520 (d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

As required, prior to Step Four, the ALJ determined the Residual Functional Capacity of Plaintiff to perform light work (lifting and carrying 20 pounds occasionally and ten pounds frequently; sitting at least six hours out of eight; and standing/walking at least six hours out of eight) as defined in 20 CFR 404.1567 (b) and 416.967(b) except the Plaintiff can never climb ropes, ladders, or scaffolds, but can occasionally climb stairs and ramps. Plaintiff can occasionally stoop, kneel, and crouch. Pushing and pulling with legs is limited to no more than occasional operation of foot controls bilaterally. He can occasionally reach overhead with his right upper extremity and must avoid concentrated exposure to vibration, extreme cold, and unprotected heights.

At Step Four it was the finding of the ALJ that Plaintiff was not capable of performing past relevant work as the demands of that work exceeds his residual functional capacity.

Finally, at Step five, the ALJ found, considering Plaintiffs' age, education, work experience, and residual functional capacity, there are jobs which exist in significant number in the national economy that Plaintiff could perform.

## Judicial Review Standard

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Id*. However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" Id. (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)).

Courts should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

### Discussion

A. Did the ALJ properly review the evidence and utilize "some " medical evidence to support the findings of Plaintiff's Residual Functional Capacity?

The ALJ analyzed and discussed each of Plaintiff's alleged impairments and complaints. The ALJ referenced the factors which must be considered in evaluating a claimant's credibility. Specific analysis was set out as to Plaintiff's statements regarding claims of disability. The ALJ provided a thorough discussion of the medical records which set out Plaintiff's medical history and medical findings. There was a lack of medical evidence supporting the subjective allegations. *See Forte v. Barnhart* , 377 F.3d 892, 895 (8th Cir. 2004) ("[L]ack of objective medical evidence is a factor an ALJ may consider."); *Kisling v. Chater* , 105 F.3d 1255, 1257 (8th Cir. 1997) (The Eighth Circuit has held that allegations of disabling pain may be properly discounted because of inconsistencies such as minimal or conservative medical treatment.). The ALJ acknowledged that Plaintiff

experienced some limitations from his physical impairments, which included mild degenerative changes of the right shoulder and degenerative changes of the cervical and lumbar spine, but determined that the medical evidence did not corroborate the severity of his alleged symptoms. For example, test results did not substantiate Plaintiff's claims of disabling physical limitations. A magnetic resonance imaging (MRI) scan of Plaintiff's right shoulder dated December 2010 revealed mild acromioclavicular osteoarthritis. X-rays of Plaintiff's back showed degenerative disc disease of the lumbar spine. An MRI scan of Plaintiff's neck showed some degenerative changes, while an x-ray of his neck showed minimal degenerative disc disease. Consistent with the holding in *Martise v. Astrue,* 641 F.3d 909, 923 (8th Cir. 2011), the ALJ fulfilled the duty to evaluate the severity of Plaintiff's impairments. In addition, "mild" or "minimal" diagnostic test results constitute medical evidence in support of an RFC for light work. *See Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) ("We find that substantial evidence supports the ALJ's conclusion that Steed can perform light work and that Steed suffered only mild degenerative changes to her back condition. Even where Steed's diagnostic tests showed actual disc herniation or bulging, the diagnosis is tempered in several instances in the medical records by the words 'mild' or 'minimal' regarding either the herniation, or its effects").

Credibility questions concerning a claimant's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). In analyzing a claimant's subjective complaints, the ALJ considers the entire record, including the medical records; third party and Plaintiff's statements; the claimant's daily activities; the duration, frequency and intensity of pain or other subjective complaints; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *See* 20 C.F.R. §§ 404.1529, 416.929; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The Eighth Circuit has held that although the *Polaski* factors "must be taken into account, the ALJ's decision need not include a discussion of how every *Polaski* factor relates to the claimant's credibility." *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007); *Samons v. Apfel*, 497 F.3d 813, 820 (8th Cir. 2007) ("[W]e have not required the ALJ's decision to include a discussion of how every *Polaski* 'factor' relates to the claimant's credibility.").

Here, an examining physician noted that Plaintiff could use his hands and fingers for several functional activities such as handling buttons, zippers, keys, coins, feeding himself, and writing. The ALJ determined that the objective medical evidence did not support Plaintiff's claims of disabling physical limitations. *See Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (affirming ALJ's rejection of claimant's argument she was unable to work when multiple

examinations showed no abnormalities). The ALJ wrote extensively on the analysis of Plaintiff's statements and medical record. *See, e.g., Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009) ("Indeed, the ALJ wrote nearly four full pages of analysis regarding the consistency between Wiese's self-reports contained in the record, her treating physicians' notes and assessments, the medical evidence and the hearing testimony. In doing so, the ALJ provided a thorough analysis of the inconsistencies she noted in the record, and those inconsistencies are supported by the record."). The record patently supports the conclusion that the ALJ properly evaluated Plaintiff's credibility and the medical evidence in relation thereto.

B. Was the vocational expert's testimony compatible with the dictionary of occupational titles?

The vocational expert testified that a hypothetical person of Plaintiff's age, with his education, work experience, and RFC could perform jobs as an order caller and a mail sorter – both light, unskilled jobs. Based on this testimony, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy, and, therefore, Plaintiff was not disabled under the Act.

Plaintiff contends that the vocational expert's testimony conflicted with information in the Dictionary of Occupational Titles (DOT). Plaintiff claims that each of the jobs the vocational expert identified requires "frequent" reaching, meaning that it exists from 1/3 to 2/3 of the time. DOT definitions are simply

generic job descriptions that offer the approximate maximum requirements for each position, not their range. *See Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007) ("[A] claimant's reliance on the DOT as definitive authority on job requirements is misplaced" because "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range. The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities.") (quotations omitted)). The ALJ found, as demonstrated by the record and a thorough analysis of same, that Plaintiff was not disabled.

The ALJ was justified in relying on the vocational expert's testimony in finding Plaintiff not disabled. *See Gragg v. Astrue*, 615 F.3d 932, 941 (8th Cir. 2010) ("Because the hypothetical was adequate, the vocational expert's testimony was reliable to establish that there are jobs that [Plaintiff] can perform that exist in significant numbers within the regional and national economies."). The ALJ asked the vocational expert if the testimony was consistent with the DOT and the vocational expert stated that it was.

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 21st day of July, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE